**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

LUIS ANTONIO MOLINA ALBERTO,

Petitioner,

v.

RUBEN LEYVA, *et al.*,

Respondents.

Case No. 2:26-cv-01216-RFB-NJK

**ORDER GRANTING WRIT OF HABEAS CORPUS**

Before the Court is Petitioner Luis Antonio Molina Alberto's Petition for Writ of Habeas Corpus, which he filed pursuant to 28 U.S.C. § 2241. See generally ECF No. 1-1 [hereinafter, "Petition"]. Through it, he challenges the lawfulness of his ongoing detention at the Nevada Southern Detention Center ("NSDC") in the custody of Immigration and Customs Enforcement ("ICE"). Specifically, Respondents assert that Petitioner is subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2)(A). See generally Federal Respondents' Return to Petition, ECF No. 9 [hereinafter, "Opposition"]. In response, Petitioner argues that his arrest and detention by Respondents violates: (i.) the Immigration and Nationality Act ("INA") and (ii.) the Fifth Amendment's Due Process Clause. See ECF No. 14 [hereinafter, "Traverse"] at 5–13. Moreover, Petitioner argues his detention was void *ab initio* based on Respondents' failure to employ proper procedures. See 5–7.

Respondents invoke their novel statutory interpretation of § 1225(b)(2)(A) to justify Petitioner's detention. See generally Opposition. This Court is well acquainted with Respondents' interpretation of the INA, as the Court has repeatedly rejected it as unlawful. See, e.g., Jacobo Ramirez v. Mullin, No. 2:25-cv-02136-RFB-MDC, 2026 WL 879799, at *34–35 (D. Nev. Mar. 30, 2026) (collecting cases). In fact, on March 30, 2026, the Court issued a classwide judgment

declaring Federal Respondents' interpretation of § 1225(b)(2)(A)—and the Executive Branch's mass immigration detention policies that arise from that interpretation—unlawful, because undocumented noncitizens like Petitioner, who are arrested by ICE officers in the interior of the country and alleged to have entered without inspection or parole, are subject to detention under 8 U.S.C. § 1226(a) and its implementing regulations, 8 C.F.R. §§ 236.1, 1236.1, and 1003.19. See id. at *33. The Court further vacated the government's recently adopted § 1225(b)(2)(A) policies—which were encapsulated in an internal ICE Memo and the Board of Immigration Appeals (BIA) decision in Matter of Yajure Hurtado, 29 I. & N. Dec. 216 (BIA 2025)—pursuant to § 706(2)(A) of the Administrative Procedures Act. See id.

As discussed below, the Court finds that Petitioner is a member of the Jacobo Ramirez Class. Therefore, his arrest and ongoing detention under § 1225(b)(2)(A) is unlawful and violates this Court's declaratory judgment and vacatur. Further, the Court finds Petitioner's arrest and ongoing detention without the procedural protections provided under § 1226(a) and its implementing regulations violates his constitutional right to due process. Finally, the Court finds the appropriate remedy in this case is Petitioner's immediate release from custody on personal recognizance.

## I.    CLASS MEMBERSHIP

From the outset, the Court finds that Petitioner is a member of the Jacobo Ramirez Class. This certified class includes the following people:

> All noncitizens in the U.S. without lawful status (1) who are or will be arrested or detained by ICE; (2) who are or will be in removal proceedings before an Immigration Court within the District of Nevada; (3) whom DHS alleges or will allege to have entered the United States without inspection or parole; (4) who are not or will not be subject to detention under 8 U.S.C. §§ 1226(c), 1225(b)(1), or 1231 at the time they are scheduled for or request a bond hearing; and (5) whose most recent arrest by ICE occurred inside the United States and not while arriving in the United States.

Id. at *4 (citation omitted). Based on the Parties' undisputed factual allegations, and the evidence they supply, the Court finds that Petitioner satisfies these criteria. See Carlson v. Landon, 186 F.2d 183, 188 (9th Cir. 1950) (describing the factfinding process in habeas corpus proceedings). First,

Petitioner is an undocumented noncitizen who is actively being detained by ICE. See Traverse at 2. Second, he is in removal proceedings before the Las Vegas Immigration Court, which sits in the United States District of Nevada. See ECF No. 14-1 at 2 (Form I-862, Notice to Appear). Third, DHS alleges that Petitioner entered the United States without inspection, admission, or parole. See Opposition at 1. Fourth, Respondents are detaining him pursuant to § 1225(b)(2)(A); in other words, the government is not asserting that Petitioner is subject to detention under §§ 1226(c), 1225(b)(1), or 1231. See generally Opposition. Fifth, Petitioner was most recently arrested well within the country's interior, not while arriving in the United States. See ECF No. 14-1 at 25 (Form I-213). In sum, Petitioner clearly falls within the Jacobo Ramirez Class, and he is entitled to the relief afforded to the Class by this Court. Cf. Navarro v. Mukasey, 518 F.3d 729, 737 (9th Cir. 2008) ("They are, accordingly, class members eligible for relief.").

Therefore, the Court finds Petitioner's ongoing detention is unlawful under the INA, as the government is improperly subjecting him to mandatory detention under § 1225(b)(2)(A) in violation of this Court's declaratory judgment and vacatur.[1] See Jacobo-Ramirez, 2026 WL 879799, at *33.

## II.    DUE PROCESS

The Court also finds that Petitioner's detention violates the Due Process Clause of the Fifth Amendment. The Court has previously clarified that similarly situated noncitizens are entitled to due process under the Constitution. See, e.g., Escobar Salgado v. Mattos, 809 F. Supp. 3d 1123, 1158–60 (D. Nev. 2025); Jacobo Ramirez v. Noem, 817 F. Supp. 3d 1037, 1053 (D. Nev. 2025). The Court incorporates these holdings, and their underlying reasoning, by reference, and it applies them to the facts of this case. Consequently, the government may not deny "notice" or "an opportunity to be heard" to a noncitizen "who has entered the country, and has become subject in all respects to its jurisdiction, and a part of its population, although alleged to be illegally here."

---

[1] Because the Court grants the writ based on Petitioner's due process and void *ab initio* claims regarding the procedures used by Federal Respondents to effectuate his arrest and detention heretofore, the Court does not address Petitioner's additional claim regarding the constitutional adequacy of his April 13, 2026, bond hearing at this time.

Yamataya v. Fisher, 189 U.S. 86, 100–01 (1903).

Section 1226(a) and its implementing regulations guarantee noncitizens detained under said provision multiple levels of "substantial procedural protections" against the erroneous deprivation of their liberty. See Jacobo Ramirez, 2026 WL 879799, at *6 (quoting Rodriguez Diaz v. Garland, 53 F.4th 1189, 1196 (9th Cir. 2022)). These protections include, *inter alia*: the requirement that a noncitizen cannot be arrested without an administrative warrant or detained without notice of the basis for their detention through a notice to appear, both of which must be signed and served by designated immigration officers; the requirement that the arresting ICE officer conduct an initial custody determination at the outset of detention, wherein the noncitizen has an opportunity to "'demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding'"; and the right to seek review of an ICE officer's initial custody determination through a prompt bond hearing before an immigration judge, wherein the IJ will order release on bond if, at a hearing based on individualized evidence, the noncitizen establishes by a preponderance of the evidence that they are not "a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk." See id. at 6–7 (citing 8 C.F.R. §§ 236.1(c)(8), 236.1(d)(1), 287.5(d), 287.8(c)(2)(i)-(ii)), 1003.19; Rodriguez Diaz, 53 F.4th at 1196 (citations omitted)).

The government's novel mass detention policies under § 1225(b)(2)(A) require no comparable procedures to ensure its detention authority respects constitutional limits. Lopez-Campos v. Raycraft, --- F.4th ---, No. 25-1965, 2026 WL 1283891, at *12 (6th Cir. May 11, 2026) ("[T]he government's ability to detain noncitizens is not limitless. It should effectuate two regulatory goals: (1) ensuring the appearance of noncitizens at future immigration proceedings and (2) preventing danger to the community.") (citing Zadvydas v. Davis, 533 U.S. 678, 690 (2001)). As a result, noncitizens, like Petitioner, who are arrested and detained pursuant to these policies are often arrested by ICE officers in the interior of the country and subjected to months of detention without procedures to ensure the government considers—let alone substantiates—whether it has a constitutionally recognized interest in depriving the detainee of their liberty.

Indeed, ICE's detention policy, as evidenced by the July 8th, 2025 Memo issued by Acting ICE Director Todd Lyons, specifically instructs ICE agents against issuing any "Form I-286, Notice of Custody Determination" to noncitizens like Petitioner because individual custody determinations are only required under § 1226 and its implementing regulations. See Jacobo Ramirez, 2026 WL 879799, at *3 (citing 8 C.F.R. § 236.1(c)(8)). This Court vacated that policy on March 30th, see id. at *33, yet, as Petitioner's circumstances illustrate, the government is still detaining Class Members without any consideration of their dangerousness or risk of absconding from removal proceedings. However, the government has "no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." Hernandez v. Sessions, 872 F.3d 976, 994 (9th Cir. 2017); see also Barbosa da Cunha v. Freden, ---- F.4th ---, No. 25-3141-PR, 2026 WL 1146044, at *21 (2d Cir. Apr. 28, 2026) ("While noncitizens can be detained temporarily to 'give[] immigration officials time to determine an alien's status without running the risk of the alien's either absconding or engaging in criminal activity,' that is not what is going on here, where detention is mandatory regardless of these risks.") (quoting Jennings v. Rodriguez, 583 U.S. 281, 286 (2018)).

Considering the above, this Court found the government's expansion of § 1225(b)(2)(A) to apply to millions of undocumented noncitizens living in the United States, many of whom, like Petitioner, are "neighbors, spouses, mothers, fathers, and grandparents of American citizens," raises serious constitutional concerns under the Due Process Clause of the Fifth Amendment. See id. at *2, *26–29 (discussing the due process and Fourth Amendment concerns raised by the government's application of § 1225(b)(2)(A) to Class Members); see also Barbosa da Cunha v. Freden, --- F.4th ---, No. 25-3141-PR, 2026 WL 1146044, at *22–23 (2d Cir. Apr. 28, 2026) (finding the government's interpretation raised due process concerns including that it "would likely subject" noncitizens "to unconstitutionally prolonged detention" "compounded by the fact that that noncitizens have no right to counsel and are therefore often unrepresented in removal proceedings" and thus "lack the ability to reliably challenge their detention or the conditions in which they are being held.").

As such, this Court finds that Petitioner is entitled to the procedural protections provided by § 1226(a), not merely by statute and regulation, but also by the Due Process Clause. Therefore, as illustrated below, Federal Respondents' deprivation of Petitioner's liberty without the protections afforded by § 1226(a)—procedures that encompass pre-deprivation notice of the individualized basis for ICE's decision to detain a noncitizen, "subject to numerous levels of review, each offering [the detainee] the opportunity to be heard by a neutral decisionmaker"— violates Petitioner's right to procedural due process. Rodriguez Diaz, 53 F.4th at 1210. Likewise, the government's failure to articulate an individualized interest in detaining Petitioner, including in these habeas proceedings, violates Petitioner's right to substantive due process. See Zadvydas, 533 U.S. at 690.

**A. *Procedural Due Process***

To determine what process is due under the Constitution, courts apply the three-part balancing test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976) to analyze and balance both the private and governmental interests affected. See Rodriguez Diaz, 53 F.4th at 1203–1207 (collecting cases and clarifying that the Mathews test is appropriate in the context of immigration detention). Specifically, courts weigh the following factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement[s] would entail." Mathews, 424 U.S. at 335 (citation omitted).

On balance, these factors weigh heavily in favor of Petitioner. First, Petitioner has a paramount interest in his physical liberty. That interest is especially weighty considering the lack of process he has received heretofore, upon his arrest and throughout his detention, and his length of detention—over three months. See Rodriguez Diaz, 53 F.4th at 1208 (considering the process the immigration detainee had already received during his detention pursuant to § 1226(a) and the further process that was available to him in weighing his private liberty interest).

Second, the risk of an erroneous deprivation of liberty is extraordinarily high under the

government's current procedures (or absence thereof), which do not require any individualized determination that Petitioner's detention is justified. Nor is Petitioner provided with timely notice and an opportunity to challenge the government's basis for his arrest and detention under these procedures; for example, Petitioner is unable to challenge the basis for his detention based on a mistake of fact, in contrast to procedural protections available under other mandatory detention provisions of the INA. See, e.g., Demore v. Kim, 538 U.S. 510, 514 n.3 (2003) (describing the availability of a "Joseph hearing," which is "immediately provided to a detainee who claims that he is not covered by § 1226(c)" where "the detainee may avoid mandatory detention by demonstrating that he is not an alien, was not convicted of the predicate crime, or that [the agency] is otherwise substantially unlikely to establish that he is in fact subject to mandatory detention.") (citing 8 C.F.R. § 3.19(h)(2)(ii) (2002); Matter of Joseph, 22 I.&N. Dec. 799 (BIA 1999)).

In contrast, longstanding procedures—which the government has only recently abandoned after thirty years of consistent prior practice—require an administrative warrant, a determination by ICE that Petitioner's detention is justified based on his individual circumstances, written notice of that determination, and a prompt, meaningful opportunity to be heard by a neutral decisionmaker, subject to multiple levels of administrative and judicial review. See Jacobo-Ramirez, 2026 WL 879799, at *29–31; see also Rodriguez Diaz, 53 F.4th at 1210. These alternate procedures greatly reduce the risk of erroneous deprivation.

Third, the government's interest in enforcing immigration law and presumed interest in detaining noncitizens who are dangerous or a flight risk are served, and not unduly burdened, by the longstanding procedural protections provided to noncitizens like Petitioner to ensure they are indeed a danger to the community or at risk of absconding. See Escobar Salgado, 809 F. Supp. 3d at 1160–62. Moreover, the additional procedural requirements afforded under § 1226(a) serve to *reduce* the fiscal and administrative burden of civil immigration detention. See Jacobo-Ramirez, 2026 WL 879799, at *30 ("Recent estimates by the federal government find that supervised release programs such as those available under § 1226 cost less than $4.20 each day per participant, compared with detention costs of $152 per day.") (citation omitted).

In sum, the Mathews factors weigh heavily in favor of Petitioner, and the Court finds his

arrest and detention without the procedures required under § 1226 violate his right to procedural due process.

**B. *Substantive Due Process***

Outside of the criminal context, government detention violates the substantive component of the due process clause "unless the detention is ordered . . . in certain special and narrow nonpunitive circumstances, . . . where a special justification . . . outweighs the individual's constitutionally protected interest in avoiding physical restraint." Zadvydas, 533 U.S. at 690 (citations and quotation marks omitted). To date, Respondents have not asserted an individualized justification—let alone a special or compelling justification—for depriving Petitioner of his freedom. Accordingly, the Court further finds that Petitioner's prolonged detention, which is poised to last for an untold period of time and, as set forth *infra* Part III, was void *ab initio*, also violates his right to substantive due process. Cf. Escobar Salgado, 809 F. Supp. 3d. at 1162 (elaborating on this same analysis and reaching the same conclusion).

For the foregoing reasons, the Court has little difficulty concluding that Petitioner's detention violates his right to procedural and substantive due process and is, therefore, unconstitutional.

**III.    REMEDY**

Based on the record before it, the Court finds that Petitioner has been subjected to arbitrary, erroneous, and prolonged detention. The Court's task then is to determine the appropriate remedy for these violations. See Sanders v. Ratelle, 21 F.3d 1446, 1461 (9th Cir. 1994) ("A federal court is vested with the largest power to control and direct the form of judgment to be entered in cases brought up before it on habeas corpus. The court is free to fashion the remedy as law and justice require[.]") (alterations in original) (citations omitted). Given the history of regulatory, statutory, and constitutional violations in this case, the Court agrees and finds immediate release in the appropriate equitable remedy in this case.

Despite being ordered to do so by this Court, Respondents failed to produce alongside their Return—or produce at any time over the course of the last six weeks, despite Respondents'

assurances that "[a] request has been made with OIL/ICE and this response will be supplemented as soon as [the forms] are received by this office," see Opposition at 1—a Form I-286 Initial Custody Determination and a Form I-200 Administrative Warrant or in the alternative, certify that such documents are not in their possession, custody, or control. See ECF No. 5 [hereinafter, "Order to Show Cause"] at 2. The Court finds Respondents' failure to produce evidence—for weeks—of a lawfully executed and served administrative warrant and individualized pre-deprivation custody determination, in the face of Court order, is a concession that no such record exists as to this Petitioner, *i.e.*, he was not afforded procedures in compliance with the INA and this Court's classwide judgment. See Jacobo-Ramirez, 2026 WL 879799, at *31. ("The Court issues a classwide declaratory judgment that Class Members are subject to detention under § 1226(a) and its implementing regulations. Defendants must therefore comply with 8 C.F.R. §§ 236.1(b); 236.1(c)(8) in arresting and detaining any Class Member. If Defendants deny release on bond or conditional parole after an initial custody determination, Class Members are entitled to custody redetermination(s) before an immigration judge upon request consistent with 8 C.F.R. §§ 236.1(d); 1003.19.").

On that basis, the Court finds Petitioner's detention was void *ab initio*, as Respondents "detained [Petitioner] under the wrong statute and without any notice or opportunity to be heard, much less the procedures required under Section 1226(a)." Rodriguez-Acurio v. Almodovar, No. 2:25-cv-06065 (NJC), 2025 WL 3314420, at *31 (E.D.N.Y. Nov. 28, 2025) (ordering a noncitizen's release on this basis because "a bond determination by a DHS officer or an immigration judge would not remedy the core constitutional violation at issue here" where the noncitizen's detention was unlawful from its inception); see also 8 C.F.R. § 236.1(d)(1) (setting forth the requirement for an initial custody determination for noncitizens detained § 1226(a)); see also Djiwaje v. Bondi, No. 2:26-cv-00344-RFB-MDC, 2026 WL 926753, at *3–4 (D. Nev. Apr. 6, 2026) (Finding "the legal authority to arrest and detain a noncitizen under § 1226(a) derives entirely from the I-200 [administrative warrant]'s compliance with governing regulations[,] and in the absence of a showing that the warrantless arrest exception under 8 U.S.C. § 1357(a)(2) applied at the time of the noncitizen's arrest, the petitioner's seizure was unlawful such that release was

the appropriate remedy) (citations omitted).  .

While ordering a prompt bond hearing at which the government bears the evidentiary burden by clear and convincing evidence may be an appropriate remedy in some cases, here the Court declines to keep Petitioner detained as it would not adequately remedy the erroneous deprivation he has suffered and it would offer yet another opportunity for Federal Respondents to violate this Court's orders and due process. This Court finds that ordering a bond hearing here "would effectively allow the Government to transform an unlawful detention into a lawful one through *post-hoc* justifications" and would inadequately remedy the harms suffered by Petitioner. Zheng v. Rokosky, No. 26-CV-01689, 2026 WL 800203, at *11 (D.N.J. Mar. 23, 2026); see also, e.g., E.A. T.-B. v. Wamsley, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025) ("Although the Government notes that Petitioner may request a bond hearing while detained, such a post-deprivation hearing cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty."); Domingo v. Kaiser, Case No. 25-cv-05893 (RFL), 2025 WL 1940179, at *3 (N.D. Cal. July 14, 2025) ("Even if Petitioner[ ] received a prompt post-detention bond hearing under 8 U.S.C. § 1226(a) and was released at that point, he will have already suffered the harm that is the subject of his motion; that is, his potentially erroneous detention."). The Court thus finds "the typical remedy" for "unlawful executive detention"—immediate release from custody—is appropriate here. Munaf v. Geren, 553 U.S. 674, 693 (2008).

Additionally, the Court finds that it must adopt equitable remedies to ensure that Federal Respondents abide by due process moving forward, in the event of Petitioner's re-detention pursuant to § 1226(a). Cf. Burnett v. Lampert, 432 F.3d 996, 999 (9th Cir. 2005) ("Federal courts have a fair amount of flexibility in fashioning specific habeas relief."); U.S. v. Handa, 122 F.3d 690, 691 (9th Cir. 1997) (describing the broad, flexible power federal courts possess to fashion equitable relief in the context of habeas corpus proceedings). Here, the Court finds it appropriate to order that in the event of Petitioner's re-detention under 8 U.S.C. § 1226(a), Federal Respondents must provide Petitioner *a pre-deprivation* bond hearing wherein the government must prove, by clear and convincing evidence, that detention is appropriate under § 1226(a) and its

implementing regulations. See Martinez v. Clark, 124 F.4th 775, 784 (9th Cir. 2024) (reviewing the immigration court and BIA's compliance with a district court's habeas order that the government provide an immigration detainee a bond hearing "under the Due Process Clause" that required "the government to show by clear and convincing evidence that the detainee presents a flight risk or a danger to the community at the time of the bond hearing.") (citing Singh v. Holder, 638 F.3d 1196, 1203 (9th Cir. 2011)). While the Court does not take this step lightly, it finds it is necessary because of the egregious violations perpetrated by Federal Respondents heretofore.

### IV.    CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** the Petition for Writ of Habeas Corpus (ECF No. 1-1) is **GRANTED**.

**IT IS FURTHER ORDERED** Respondents must **RELEASE** Petitioner from detention **ON HIS OWN RECOGNIZANCE** by **June 3, 2026, between 12:00 and 3:00 p.m.** Respondents are **PROHIBITED** from imposing release conditions that substantially interfere with Petitioner's liberty, such as electronic monitoring, without having established the reasonableness of those restrictions, by clear and convincing evidence, at a pre-deprivation hearing. If ICE/DHS imposes release conditions in violation of this Order, the Court will consider contempt sanctions against the agency officials responsible. ***Failure to release the Petitioner in the specified release window will lead to sanctions against Respondents, including the individual officers and attorneys of Respondents involved with overseeing his release from custody.***

**IT IS FURTHER ORDERED** Respondents must return Petitioner's personal property, including any personal identification and employment authorization documents, **UPON HIS RELEASE.** If ICE/DHS fails to do so, the Court will consider contempt sanctions against the agency officials responsible.

**IT IS FURTHER ORDERED** that Respondents are **PERMANENTLY ENJOINED** from detaining Petitioner during the pendency of his current removal proceedings unless and until it is determined that his detention is warranted under § 1226(a) after a constitutionally adequate

bond hearing, as outlined above, *supra* Part III.

**IT IS FURTHER ORDERED** that Respondents are **PERMANENTLY ENJOINED** from detaining Petitioner pursuant to 8 U.S.C. § 1225(b)(2)(A).

**IT IS FURTHER ORDERED** that Respondents are **PERMANENTLY ENJOINED** from invoking 8 C.F.R. § 1003.19(i)(2) to continue Petitioner's detention, as the Court has already found that the regulatory automatic stay is facially unconstitutional and adopts that finding here. See generally Herrera v. Knight, 798 F. Supp. 3d 1184 (D. Nev. 2025).

**IT IS FURTHER ORDERED** that the Parties shall file a joint status report by **June 4, 2026** confirming Respondents' compliance with this Order including (i) the date and time of Petitioner's release and the provision of advanced notice to Petitioner's counsel; (ii) compliance with this Court's directives concerning release on personal recognizance; and (iii) the return of Petitioner's personal property upon release.

The Clerk of Court is kindly instructed to enter judgment accordingly and close this case. The Court retains jurisdiction to enforce its order and judgment. Petitioner may move to reopen this case to enforce the judgment without filing a separate case. The Court also retains jurisdiction to consider Petitioner's request for fees and costs pursuant to 28 U.S.C. § 2412. Petitioner may file an application for fees and costs consistent with the deadlines and requirements set forth in 28 U.S.C. § 2412 and this Court's Local Rules of Practice 54-1 and 54-14.

**DATED:** June 2, 2026.

**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**

- 12 -